**NOT FOR PUBLICATION** [8, 9]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
P.R., INDIVIDUALLY AND O/B/O S.H.   :
& F.R., JOSHUA RIDGEWAY &           :    Civil Action No. 05-42 (FLW)
JENNIFER BARNES,                    :
                                    :
        PLAINTIFFS, PRO SE,         :    **OPINION**
                                    :
        v.                          :
                                    :
BRIDGETON BOARD OF EDUCATION,       :
                                    :
        DEFENDANT.                  :
_____ :

For Plaintiff Jennifer Barnes:
JENNIFER BARNES, PRO SE
C/O TOTAL ENVOLVEMENT
P.O. BOX 172
MALAGA, NJ 08328

For Plaintiff Joshua Ridgeway:
JOSHUA RIDGEWAY, PRO SE
C/O TOTAL ENVOLVEMENT
P.O. BOX 172
MALAGA, NJ 08328

For Plaintiff Providence Ridgeway, Individually and o/b/o S.H. & F.R.:
PROVIDENCE RIDGEWAY., PRO SE
C/O TOTAL ENVOLVEMENT
P.O. BOX 172
MALAGA, NJ 08328

For Defendant Bridgeton Board of Education:
Robert A. DeSanto
Gruccio, Pepper, DeSanto & Ruth, P.A.
817 Landis Avenue
PO Box 1501
Vineland, NJ 08362-1501

**WOLFSON**, United States District Judge:

Plaintiff Providence Ridgeway ("P.R") is the parent of Plaintiffs Joshua Ridgeway ("J.R.") and Jennifer Barnes ("J.B."), and Plaintiffs S.H. and F.R., two minor children. Plaintiffs have filed a motion for summary judgment seeking to recover $123,687.50 in fees and costs associated with the services of Tracee Edmondson, a lay advocate and consultant retained by Plaintiffs to assist in obtaining the appropriate educational placements and related services for the four children. In opposition to Plaintiffs' application and in support of its own motion for summary judgment, Defendant Bridgeton Board of Education argues that: 1) Edmondson has prepared the instant complaint and motions, and, as such, has engaged in the unauthorized practice of law; 2) the fees charged by Edmondson are for work done in a representative capacity at special education proceedings, which are impermissible pursuant to N.J.A.C. 1:1-5.4(b); and 3) Plaintiffs have not shown that the fees sought are reasonable. This Court has jurisdiction pursuant to 20 U.S.C. § 1415 and 28 U.S.C. § 1331. For the reasons stated below, Plaintiffs' and Defendant's motions are denied without prejudice.

### I.. BACKGROUND

P.R. and her children, at all times relevant to the present action, resided within the limits of the City of Bridgeton and the children were enrolled in the Bridgeton Public Schools. In September of 2002, apparently unhappy with the educational services her children received, P.R. hired "consultant Total Evolvement to advocate on their behalf for appropriate placements, related services and compensatory services." P.R. Aff. ¶ 4. Tracee Edmondson ("Edmondson") is the "founder and president of Total Envolvement LLC, a consulting, training and advocacy service provider registered with and in the State of New Jersey" and she served as "consultant and

advocate" for P.R. and her children. Edmondson Aff. ¶ 1-2.  It is undisputed that Edmondson is not an attorney.  With Edmondson acting as the children's advocate, complaints were brought before the New Jersey Office of Administrative Law ("OAL") on behalf of J.B. and F.R., and mediation with the Department of Education was sought on behalf on J.R. and S.H.

On April 21, 2003, mediation was held in J.R. and S.H.'s cases, and the cases were ultimately resolved on April 21, 2003.  Def.'s Ex. A, B.  The Notice of Agreement in the S.H. case provides:

> 1) Bridgeton [Board of Education] agrees to send all appropriate educational records for S.H. to the following proposed educational placements: (1) Salem Co. Votec, (2) Cumberland Co. Votec, (3) Gloucester Co. Spec. Services (Bankbridge Program).
> 2) The [Individualized Education Program] team for S.H. will meet after the results of of [sic] request for placement for the 03-04 school year are returned from the above proposed placements.
> Notice of Agreement, P.R. o/b/o S.H. v. Bridgeton BOE, Def.'s Ex. A.

The Notice of Agreement in the J.R. case provides:

> 1) Both parties agree that the educational placement for J.R. will be the Bridgeton High School.  This placement will continue for the rest of this current school year ending June 25, 2003.
> 2) Both parties agree to hold an [Individualized Education Program] meeting within the next 12 school days to develop a [sic] educational program. This program will contain the following but not limited to the following (1) 1-1 Aid, (2) Counseling.
> 3) Both parties agree to hold a IEP review meeting on or before 8/15/03 to develop a IEP for the 03-04 school year placement.
> 4) Bridgeton BOE agree [sic] to send J.R.'s school records to Salem, and Cumberland County Votec.
> Notice of Agreement, P.R. o/b/o J.R. v. Bridgeton BOE, Def.'s Ex. B.

J.B. and F.R.'s cases before the OAL were settled before a hearing was held and the Administrative Law Judge ("ALJ") could enter a decision on the merits.  ALJ Dubin approved the

3

settlements and issued orders requiring compliance and establishing their enforcability.  Def.'s Ex.

D, E.  The Consent Order in the F.R. case is dated November 25, 2003, signed by the ALJ, P.R.

and Edmondson, and provides:

> 1) The IEP signed by all parties dated August 25, 2003 is agreed to and shall be implemented.
> 2) F.R. has been admitted to the Cumberland County Vocational Technical School which is determined to be an appropriate placement in accordance with the IEP.
> 3) F.R. is also placed in the Bridgeton High School Alternative School which is an agreed placement in accordance with the above referenced IEP.
> 4) The Petitioner waives any requests for tutoring of F.R.
> Consent Order, Def.'s Ex. E.

In the J.B. case, the ALJ's Order dated December 17, 2003 provides that the parties agreed to the

following settlement:

> 1) A pre-Wilson Reading assessment of J.B. shall be conducted with her mother, P.R., in attendance, should she wish to be involved.
> 2) The Board shall provide J.B. with one Wilson session per day, five days per week, with all sessions taking place on those days the Bridgeton Public Schools are in session.  All sessions shall be taught by a special education teacher with Wilson program experience.
> 3) At any time during the administration of the program, either party may request a meeting to discuss J.B.'s progress.
> 4) The program shall continue through June 14, 2004, the scheduled conclusion of the school year.
> 5) At the commencement of the program, J.B. shall sign a letter of commitment to the program and acknowledge her responsibility to attend the sessions and perform the work as required.  At that time, J.B. shall also sign a written waiver of confidentiality providing that her mother, P.R., shall be copied on all correspondence between the parties.
> 6) In the event J.B. should be unable to attend any scheduled session, she shall notify the teacher and/or the Board of Education Office of Student Support Services by no later than 2:00 p.m. on the date she shall be absent.
> 7) In the event J.B. should be unable to attend three sessions per week for three consecutive weeks or five consecutive sessions without submitting an acceptable excuse, the program shall be terminated by sending notice to J.B. within five business days of the catalytic absence.
> 8) The Board shall provide the books, supplies, and other instructional aids necessary and appropriate for J.B.'s participation in the Wilson program.

9) At the conclusion of the program, other than by termination, or the school year on June 14, 2004, the parties shall participate in a post-program assessment.
J.B. v. Bridgeton Board of Education, Decision, OAL DKT. NO. EDS 6282-03.

Edmondson claims to have worked 494.75 hours, collectively, on these four matters at a rate of $250 per hour, for a total of $123,687.50. Pl.'s Ex. F. According o her affidavit, Edmondson "reviewed all papers and documents relating to J.B., J.R., S.H. and F.R., provided input as required, attended IEP meetings pursuant to the mediation agreement and settlement terms, and attended the hearing proceedings and telephone conferences." Edmondson Aff. ¶ 4.

Plaintiffs allege that these settlements and mediation agreements make them "prevailing parties" and entitle them to collect Edmondson's fees pursuant to 20 U.S.C. §1415(e)(4), now 20 U.S.C. §1415(i)(3)(B). Thus, Plaintiffs have moved for fees and costs and for summary judgment on their complaint. Defendant has filed a cross-motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To avoid summary judgment the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324. A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence, the Court must "view the inferences to

be drawn from the underlying facts in the light most favorable to the [nonmoving] party." <u>Curley v. Klem</u>, 298 F.3d 271, 276-77 (3d Cir. 2002) (quoting <u>Bartnicki v. Vopper</u>, 200 F.3d 109, 114 (3d Cir. 1999)). Conclusory allegations do not meet the non-moving party's duty to set forth specific facts showing that a genuine issue of material fact exists and a reasonable factfinder could rule in its favor. <u>Ridgewood Bd. of Ed. v. Stokley</u>, 172 F.3d 238, 252 (3d Cir. 1999).

### B. Unauthorized Practice of Law

In order to seek expert fees in the District Court, Plaintiffs must either appear <u>pro</u> <u>se</u> or with an attorney representing them. 28 U.S.C. §1654; Fed. R. Civ. P. 11; U. S. Dist. Ct. Rules D.N.J., L.Civ.R. 101.1. Contrary to the practices allowed in the OAL, where a lay advocate may represent a party, N.J.A.C. 1:1-5.4(a)(7), this court does not allow a non-lawyer to act as an advocate for another party. U.S. Dist. Ct. Rules D.N.J., L. Civ. R. 101.1. To do so constitutes the unauthorized practice of law.

Here, Defendant Bridgeton contends that Edmondson is the "preparer / author" of the papers filed papers with this court on Plaintiffs' behalf in this case, and, as such, has engaged in the unauthorized practice of law and is subject to the discipline of the Committee on the Unauthorized Practice of Law. Def.'s Br. at 8-15. In support of this allegation, Bridgeton suggests that it is highly unlikely that a special needs student like J.R. prepared his own affidavit indicating that he is a prevailing party. Defendant also suggests that is highly unlikely that P.R. undertook the research necessary to make the legal arguments and citations to legal authorities as was done here. The bulk of Bridgeton's argument regarding Edmondson's alleged unauthorized practice of law, though, concern the similarities of the filings here to those in other cases

involving Edmondson.  Id.  Indeed, Bridgeton has compared the filings in the present action with the documents filed in other cases in which the fees for Edmondson's services were sought.  According to Bridgeton, these filings, regardless of the name signed to the papers, possess similarities so great that they cannot constitute mere coincidence, but instead are an indication that Edmondson is the author of all the documents.  Id.  They specifically point to Plaintiffs' exhibit 3 in this case, which is strikingly similar in language and format to exhibit 2 in L.L. v. Vineland Bd. of Ed., Civ. No. 04-521, exhibit 3 in E.R. v. Vineland Bd. of Ed., Civ. No. 03-1121, and exhibit 6 in S.W. v. Bridgeton Bd. of Ed., Civil No. 05-43.  Each of these exhibits was supposedly authored by a different plaintiff.  They have also identified the March 8, 2004 affidavit of Joshua Ridgeway as containing language and formatting identical to that used in the May 14, 2004 affidavit of Sharon Willingham in the S.W. case.  Even the certification of service used by Plaintiffs here seems to have been created from the same template used to create the certification of service in the S.W. case.  The similarities do not end here.  This Court agrees that the Plaintiffs' filings here certainly appear to bear the imprint of Edmondson's work, and create serious doubts that they were, in fact, prepared or authored by Plaintiffs.

The docket even lists each Plaintiff's address as "C/O TOTAL ENVOLVEMENT, P.O. BOX 172, MALAGA, NJ 08328," which is Edmondson's company's address.  Additionally, this case is docket number 05-42; the next civil case filed, case number 05-43, to which Plaintiffs are not parties, also involves Edmondson and is before Judge Kugler.  It seems as though Edmondson filed the two cases concurrently.  Plaintiffs even attempted to add Edmondson as a party at one point; however, the docket does not reflect that was ever effectuated.  Finally, on June 21, 2005, Plaintiff Joshua Rideway filed a document entitled "Affidavit - Power-of-Attorney," in which he

states: "Ms. Edmondson is hereby granted Power-of-Attorney for this civil action....Any questions about anything in this fees and costs case may be answered by her - on our behalf or on her own behalf."

Notwithstanding these doubts, in L.L. v. Vineland Bd. of Ed., 2005 WL 943527, 128 Fed.Appx. 916, 919 (3d Cir. 2005), a case in which Edmondson was alleged to have engaged in the unauthorized practice of law, the Third Circuit made clear that "Edmondson's alleged error [of unauthorized practice of law] does not constitute a proper ground at summary judgement for precluding [her client] from seeking allowable fees and costs on her own." Id.  The court distinguished that ruling from the ruling in E.R. v. Vineland Bd. of Ed., Civ.No. 03-1121 (JBS) (D.N.J. 2003) by noting that in E.R. there was no question of fact as to whether Edmondson had engaged in the unauthorized practice of law because she filed and signed the papers in her own name. Id. In L.L., Edmondson did not declare herself to be the preparer and signer of the filings. Similarly, in the present matter, and unlike in E.R., Edmondson did not sign her name to the filings, but instead they are said to be prepared by P.R. and J.R., respectively.  Thus, the filings are not facially improper.  Therefore, as in L.L., given the fact that the filings purport to be prepared and signed by P.R. and J.R., and not Edmondson, it would be improper for the Court to grant summary judgement in favor of Defendant solely as a result of Defendant's allegation that Edmondson engaged in the unauthorized practice of law.  Instead, the Court will deny Defendant's motion on this basis without prejudice and direct the parties, including Ms. Edmondson, to appear for a hearing before this Court on February 23, 2006, at which time, the Court will question the parties, under oath, regarding the preparation of these motion papers and the pleadings filed in this matter.

### C. Fees and Costs Associated with Edmondson's Services

The Individual with Disabilities Education Act ("IDEA") requires states to provide all children with a free and appropriate public education ("FAPE"). 20 U.S.C. § 1412. The state has a duty to identify children with disabilities and to make an individualized determination regarding their educational needs. Id. This determination is then formed into an individualized education program ("IEP"). 20 U.S.C. § 1401(a)(14). If a parent of a child with disabilities is not satisfied with the IEP, or does not feel that the state is providing the child a FAPE, the parent may institute a "due process" hearing where these rights are determined. 20 U.S.C. § 1415.

Federal statues and regulations state that a party to a due process hearing dealing with the evaluation or educational placement of a child with a disability, or the provision of a FAPE to a child, has the right to "be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities." 20 U.S.C. § 1415 (h)(1); 34 C.F.R. § 300.509(a)(1). The language involving "individuals with special knowledge or training" suggests, and the case law makes clear, that non-lawyer experts may assist a party in such proceedings. Id.; Arons v. New Jersey State Board of Education, 842 F.2d 58, 62 (3d Cir. 1988).

New Jersey regulations allow for the non-lawyer's role to extend beyond merely "accompanying and advising," by permitting non-lawyers to "represent" parents or children in special education proceedings that are before the OAL as a "contested case." N.J.A.C. 1:1-5.4(a)(7); Arons, 842 F.2d at 60. For a non-lawyer to act in this capacity a written "Notice of

Appearance/ Application" is required, N.J.A.C. 1:1-5.4(b)(4), and, in special education hearings, "the non-lawyer applicant shall include in his or her Notice an explanation of how he or she has knowledge or training with respect to handicapped pupils in their educational needs so as to facilitate the presentation of the claims or defenses of the parent or child." N.J.A.C. 1:1-5.4(b)(4)(iv).

The OAL decisions issued in the F.R. and J.B. cases indicate that Edmondson acted in a representative capacity pursuant to these regulations. P.R. o/b/o F.R. v. Bridgeton Board of Education, OAL DKT. NO. EDS 6281-03; J.B. v. Bridgeton Board of Education, OAL DKT. NO. EDS 6282-03. ALJ Dubin's decisions note that "Tracee Edmondson, Parent Advocate, appear[ed] pursuant to 34 C.F.R. § 300.508(a)(1) and N.J.A.C. 6A: 5.1(b), for petitioner."[1]  The "Statement of the Case and Procedural History" in the F.R. decision also notes that "Tracee Edmondson applied to represent P.R. in this matter pursuant to N.J.A.C. 1:1-5.4(b)(2),[2] 10 U.S.C. §1415(d), 34 C.F.R. §300.508(a)(1) and N.J.A.C. 1:6A-5.1(b)." This application was granted on September 2, 2003.  Finally, when ALJ Dubin discussed the settlement agreement involving F.R., he stated that "I approved [Edmondson's] representation and she did participate in the settlement of this matter."

---

[1] These citations appear to be incorrect.  N.J.A.C. 6A:5.1 does not exist and 34 C.F.R. § 300.508(a)(1) deals with "Impartial Hearing Officers."  34 C.F.R. § 300.509(a)(1), which deals with "hearing rights," appears to be the intended C.F.R. citation while N.J.A.C. 1:6A-5.1(b) appears to be the intended citation to the New Jersey Administrative Code.  Judge Dubin's subsequent citation to N.J.A.C. 1:6A-5.1(b) supports that this was the intended cite.

[2] This citation also seems to be mistaken; N.J.A.C. 1:1-5.4(b)(2) deals with representation in "employment relations proceedings."  The provision dealing with "special education hearings" is N.J.A.C. 1:1-5.4(b)(4).

ALJ Dubin's decisions establish that Edmondson was appearing as an advocate, on behalf of F.R. and J.B. in those proceedings.[3] The citations to N.J.A.C. 1:6A-5.1(b) and N.J.A.C. 1:1-5.4(b)(4), see Discussion, supra footnote 1, establish that Edmondson was not just "advising" pursuant to the federal regulations, but was acting in a "representative" capacity as allowed by New Jersey regulations.

The federal statutes and regulations that allow for the assistance of counsel in a due-process hearing also provide for the award of reasonable attorneys' fees to a prevailing party who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B)(i)(I). Under this provision "attorneys' fees" are understood to extend to "reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation . . . necessary for the preparation of the parent or guardian's case ." Arons, 842 F2d at 62 (quoting H.R.Conf.Rep. No. 687, 99th Cong. 1st Sess. (1986)). The collection of such expert fees are subject to the same standards of reasonableness that guide the award of attorneys' fees. 20 U.S.C. § 1415(i)(3); Field v. Haddonfield Bd. of Ed., 769 F. Supp. 1313, 1323 (D.N.J. 1991).

Section 1415(i)(3)(B) does not explicitly authorize the collection of fees by non-lawyer experts acting in a representative capacity, though. The Arons court held that this omission was not inadvertent, but that Congress' silence was intentional. 842 F.2d at 62-63. The court held that the carefully drawn statutory language, which neither authorizes nor precludes non-lawyer experts from rendering legal services, is a recognition of the states' historical exercise of control over the professional conduct of attorneys. Id. Thus, the federal statute leaves to the states the ability to

---

[3] J.R. and S.H. did not appear before the OAL.

regulate representation by non-lawyer experts. Id. at 63.

Indeed, New Jersey regulations allow non-lawyers to represent, not just "accompany and advise," parents and children at due process hearings. N.J.A.C. 1:1-5.4(a)(7). However, collection of fees for the appearance is expressly prohibited. N.J.A.C. 1:1-5.4(b)(4)(vii) (stating that for non-lawyer to represent a party in special education proceedings they must "submit a certification with the Notice stating that he or she . . . is not receiving a fee for the appearance"). As such, while a non-lawyer may represent parents and children in special education proceedings, the ability to receive compensations for their services will be limited to "work done as an expert consultant or witness." Arons, 842 F.2d at 62. Consequently, an expert must "allocate between compensable time spent in consultation and noncompensable time spent in legal representation." Id. Therefore, for Plaintiffs to recover Edmondson's fees, they must demonstrate that: 1) none of the fees charged by Edmondson are for work done in a representative capacity at special education proceedings; 2) Edmondson's fee is reasonable; and 3) Plaintiffs were prevailing parties in the matters on which Edmondson worked.

Here, OAL records from the F.R. and J.B. cases show that Edmondson appeared as a "Parent Advocate" pursuant to N.J.A.C. 1:1-5.4(b). Plaintiffs' Exhibit F is the bill for the services that Edmondson provided to Plaintiffs. While working on these matters, Edmondson billed 494.75 hours of time at a rate of $250 per hour, for a total of $123,687.50. Pl.'s Ex. F. Notwithstanding N.J.A.C. 1:1-5.4(b), which prevents non-lawyer advocates from charging parents and/or children a fee for representing them at due process hearings, Edmondson's bill reveals that she charged Plaintiffs for attending OAL hearings on March 27, 2003, July 31, 2003, September 25, 2003, October 31, 2003 and December 10, 2003. Id. Edmondson's bill makes no attempt to

distinguish between the time she spent in the representative capacity and any time spent as a consultant or witness. Any time that Edmondson billed while acting in this representative capacity is clearly noncompensable.[4]

Moreover, in order to collect fees here, Plaintiffs must to establish the reasonableness of Edmondson's fees. The Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The District of New Jersey has held that Hensley applies equally to attorney's fees and to expert fees attempting to be recovered under the IDEA. Field, 769 F.Supp. at 1324; S.D., 989 F.Supp. at 656. Thus, the reasonable fee analysis has two elements: the rate charged and the time expended. The party seeking the fee is required to submit evidence to support both the reasonableness of both components. Hensley, 461 U.S. at 433.

"It is the general rule that a reasonable hourly rate is calculated according to the prevailing market rates in the community." S.D., 989 F.Supp. at 656 (internal citations omitted). According to 20 U.S.C. §1415(i)(3)(C), that rate is standard governing rates in actions regarding the education

---

[4]Defendant argues that since it is clear that Edmondson served as a lay advocate representing Plaintiffs, she "could not now try to segregate all of preparational activities as activities of a consultant in order to circumvent the bar against receiving fees for representing P.R. and her children." Def.'s Br. at 7-8. This argument runs contrary to the Third Circuit's decision in L.L., in which the court, citing Arons, held that if found to be a prevailing party, the plaintiff "is prohibited from receiving fees for Edmondson's lay advocacy services, but she may receive costs for Edmondson's provision of educational consulting." L.L. v. Vineland Bd. of Ed., 2005 WL 943527, 128 Fed. Appx. at 919-20 (citing Arons, 842 F.2d at 60); see Arons, 842 F.2d at 61 ("Although we appreciate the difficulty of trying to allocate between compensable time spent in consultation and noncompensable time spent in legal representation, the task is not insurmountable.").

of children with disabilities. "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates and charged by attorneys with similar skill and experience." S.D., 989 F.Supp. at 656. Manville makes clear that this analysis is applied the same for experts' fees as well as attorneys' fees. Id.

Here, regarding the reasonableness of the fees, Plaintiff P.R. avers: "In determining reasonableness . . . the District attorney receives $35,000 for attending 24 school board/agenda meetings per year . . . the average meeting for the 2002-2003 school year was approximately one hour; as such, the district attorney receives approximately $1,500 per hour for services rendered." P.R. Aff ¶ 12.[5] The Court finds that this assertion falls woefully short of establishing the reasonableness of the rate charged by Edmondson. The analysis used to establish the $1,500 per hour rate is overly simplistic and the Court is quite certain that the school board's attorney does not bill at a rate of $1,500 per hour. Furthermore, P.R.'s statement regarding school board's attorney sheds no light on that the prevailing market rates in the community for lay education consultants such as Edmondson. P.R. overlooks once again that comparing a non-lawyer's rates with a lawyer's rates is mixing apples and oranges.

Nonetheless, A. Paul Kienzle Jr., the attorney that represented Bridgeton in the J.R., J.B., S.H. and F.R. matters, submitted an affidavit of his own stating that he charged the District $90 per hour in the matter. Def.'s Ex. 14. Mr. Kienzle spent a total of fifty eight hours defending the

---

[5] Notably, another client of Edmondson's, S.W., attempted to use the same data to support the reasonableness of Edmondson's fees in S.W. v. Bridgeton Bd. of Ed., Civil No. 05-43. In that case, Judge Kugler denied the plaintiff's motion for fees because he found that plaintiff failed to establish the reasonableness of the fees sought. S.W. v. Bridgeton Bd. of Ed., Civil No. 05-43 (RBK) (D.N.J. 2005).

actions, for a total fee of $5,220.00.  Id.  Edmondson, on the other hand, charged $123,687.50 and billed 494.75 hours, which the Court perceives to be an extraordinary amount of time.  She has even billed Plaintiffs for three hours of her time at $250 per hour while she was "Awaiting Telephone Conference."

    Notwithstanding the Court's concerns regarding the fees sought, Plaintiffs could be entitled to some expert fees for Edmondson's time if the Court finds that Plaintiffs are prevailing parties.  The issue of whether Plaintiffs are prevailing parties has not adequately briefed.  Therefore, the Court will deny all of the motions without prejudice.  Defendant may file any properly supported motions following the Court's hearing on February 23, 2006.  Moreover, following the February 23, 2006 hearing, Plaintiffs may refile their motion for fees provided that they comply with the terms of the accompanying order, which include that:

    1) Plaintiffs submit sworn affidavits or certifications under penalty of perjury that they, and not Tracee Edmondson, have prepared all further motions, affidavits, and other legal filings in this case;

    2) Tracee Edmondson submits a sworn affidavit or certification under penalty of perjury that she has not prepared any motions, affidavits, and/or other legal filings in this case;

    3) Edmondson submits a new bill for her fees in which she allocates between compensable time spent in consultation and noncompensable time spent in legal advocacy and/or representation and each entry makes clear whether it concerns the case of either J.R., S.H., J.B., or F.R.

    4) Plaintiffs submit evidence regarding the prevailing market rates in the community for lay education consultants.

### III. CONCLUSION

For the reasons stated above, the parties' motions are denied without prejudice. An appropriate order follows.

S/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge
